The opinion of the court isas delivered by

Mr. Justice JVott.

This case presents the two following questions for the consideration of the court:
1st. Whether the act of 1817, authorizes the City Council to take any more of the land belonging to the plaintiff) than was necessary for the purpose of widening the street?
2d. If it does, whether the legislature, in delegating such authority, have exceeded their constitutional powers?
The argument appears to me to have taken a much more .extensive range than was necessary to the decision of the question submitted. In the course of the discussion, an inquiry has been made, not only into the power, and the extent of the power which a government possesses to appropriate the property of individuals to public purposes; (which by civilians, is called the eminent domain;) but also in what branch or department of the government that power is vested.
With regard to the first, 1 think, we may, without any affectation of learning, venture unhesitatingly to affirm that every government, whatever may be its form, must possess such a power. It is an essential attribute of sovereignty, without which no government can exist. To what other various- *196 ■objects the principle extends, is not now necessary to be in-*-quired; but that it embraces the right to take private property for any public purpose, I think, too clear to admit of doubt^ The laying out of roads, cutting canals, building fortifications,. erecting public buildings, and even establishing of towns, are •matters of public interest and utility, which frequently render it indispensable that private right should yield to public necessity, and that individual interest should sometimes be sacrifi.ced to the public good.
I am also of opinion, that as a general principle, the branch of the government in which such power is vested, must judge of the necessity of exercising it, and the extent to which it may be exercised; and in the exercise of which discretion^ it- cannot be controlled by any other-' branch. I do not know that it is necessary to inquire to what branch of the government the power belongs. But if it were necessary,, it does not appear to me that it would be a question of difficult solution. I have already said that it is an essential attribute of sovereignty. Wherever the sovereign power is lodged, that constitutes a part. In absolute monarchies, all power centres in the monarch; in mixed governments, it will depend upon the structure .of the constitution. In England, I take it, that it is vested in the king and parliament jointly. For although the parliament is said to be omnipotent; yet as the king has a negative upon the laws, the expression regards him as constituting an integral part of the parliament. In republics, the sovereign power is in the .people, but éxcept in pure democracies is exercised by their representatives. The American.states maybe called representative republics. In some of them, the executive constitutes a part of the legislative authority, as in England; in which case, this eminent domain is in these two branches of the government. In South Carolina, I think, it is lodged in the legislative body, which consists of a senate and house of representatives.
I do not consider the judiciary as possessing any part of it.. The judges are the ministers of the law. Their province is limited to the exposition of the law and of the constitution. The legislature therefore possesses all the power which the people j&emselves possess; where it is not restricted by theyonstitutipjt *197 Hnd where the power is not delegated to any other branch of 'department of the government. It is said, that the power exercised over the life and liberty of the citizen, is a part of the eminent domain, in which the judiciary participates, and therefore it may exercise a controlling power over the acts of the legislature. But 1 apprehend that this is a mistake. The judiciary cannot create an offence nor prescribe a punishment. It can only administer the law according to the constitution. An act of the legislature is never referred to the judiciary, to determine whether it is just or unjust, but whether it is constitutional. I am not aware of any case where the judiciary can declare a constitutional law void. If the legislature should declare that picking an apple from a neighbour’s orchard, or a cabbage from his garden, should be a capital felony, although sve might think it severe and cruel, we should be bound to obey.
The right of the court to'control the legislature, is derived from the constitution. It is indeed the constitution itself •which controls and not the court. Being the supreme or fundamental law, the legislature, as well as the judiciary, must conform to it. Whenevér, therefore, an act of the legislature-, comes in contact with the constitution, the latter must prevail. It is thus that the judges, as the organs of the constitution, declare an act of the legislature inoperative, because it clashes with the supreme law. I cannot conceive upon what grounds the judiciary can claim a supremacy over the legislature, as long as they confine themselves within the pale of the constitu- - tion. Thy people have consigned to each branch of the government its respective powers, and - the limits of its authority are to he found only in the constitution, and it would be an usurpation in either to invade the province of the other. .
But it is unnecessary to pursue this subject in the present; case, since we profess only to enquire what the legislature have done, and whether they have acted within the scope of their" constitutional power. The first depends upon the construction to he given to the act'of 1817. If we confine ourselves to the letter of .the law, it certainly will admit of the construction contended for on the part of the city council: but Lord Coke says, “ Qui hmret in litera, heeret in cortice.” It is taking a superficial view of m act; to adhere to its letter. We must *198 look to the spirit and design of the law. When we look through •the several acts of the legislature, the object is apparent. The first act on the subject authorized the council to take as much as should he necessary for the purpose cf widening the street and no more. This led to complaints on the part of the landholders, that they received compensation for the part which was taken off only, while the fragment which was left, was of no value to them. The next, required the council to take the whole, where the owner did1 not wish to retain the remaining; part. The provisions of the last act have been quoted.
Through the whole we observe a scrupulous regard to the rights of the individual and a manifest disposition to do him justice. The object contemplated, is the widening of the street, but the owner of the lot is to be indemnified. The City Council arc authorized to take what is sufficient for the purpose contemplated. They aro required to take the whole, if the owner requires it; but they are not authorized to arrest from him what is not necessary, against his will. The act authorizes them to take the “lot or lots fronting on such street, alley or lane,” &c. The word lot is of ambiguous import, and although when speaking in relation to town lots, we usually have reference to some particular portion or section of the town, yet we have no definite idea of any given quantity of land. The word lot is sometimes used in reference to an enclosure, without regard to the quantity of land embraced. In the present case, it must mean either all the land that the plaintiff owned, or so much as ivas necessary for the street, and from any thing that could have been known a priori, be might have owned several acres more than was necessary for that purpose. Suppose the act had made use of the word land, instead of lot, would it have authorized them to have taken all the land, be it more or less, which he might have had theref I apprehend not. The words “lot” and “land”6 may be considered synonymous in the construction of this act. I am of opinion, therefore, that the construction which best meets the views of the legislature, and which best comports with the true spirit and design of the law, is to give to tbe City Council the power to take as much land, or such parts of U®? lots, as is-necessary for the street and no more.
*199 It has been contended that the legislature may have considered, that more than merely enough to run the street upon, might be necessary, to enable them to carry into effect that specific object, and therefore intended to give the whole, as timber, growing on adjacent land, is sometimes given for the purpose of keeping in repair a road which is authorized tobe laid out: and that the extent as well as the-existence of the necessity, is a matter of legislative and not judicial discretion. If the act had in express terms declared, that the whole was necessary, and had in words too strong to admit of any other construction, authorized the taking of the whole of the plaintiff’s possessions, it might Shave presented a question of no little delicacy and perhaps c£ difficulty. But no such difficulty occurs in this case. The suggestion states expressly that the City Council, after taking what was necessary for the street, have taken the remainder of the lot, and have actually contracted to sell it at a considerable profit. That statement is not denied by the answer, but tbs proceeding is -attempted to be justified under the act ¡of the legislature.
'This brings me to the second question, which is, whether the legislature has the constitutional right of taking the proper ty of one individual and transferring it to another, or to a body corporate for their own individual benefit and emolument. That is a position however, which the council have not-attempted to maintain, and from the construction which’ has •been given to the act, it has become unnecessary that it' Should be decided. • If however, it were necessary, it does not appear to me to be one of difficulty.
The constitution declares, “that the trial by jury shall be preserved as heretofore.” It also further'provides, that no free, man shall be “disseized of his freehold, liberties or privileges, or out-lawed or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or by the law of .the land.” Various opinions have been enter tinned of the meaning of those words, “the law of the land,” but all the commentators have considered them as intending, in some way or other, to operate as a check upon the exercise of arbitrary power. Our constitution is based upon certain known *200 and recognized principles of common law and common justice. Any act of partial legislation, which operates oppressively upon one individual, in which the community has no interest, is not the law of the land: Thus for instance, to subject a person to a capital or other punishment who had committed no crime, to convict one of an offence, otherwise than according to the or-' dinary course of justice, to take the property of one man aucf give it to another, would all be. contrary to those immutable principles of justice and common law, which have been consecrated by universal consent from time immemorial,’ and which are secured to us by the plain and unequivocal language of the constitution. Such acts as these would go to deprive a man of his “life, property and privileges without the judgment of his peers,” and contrary to “the law of the land.”
Hunt, for motion,
Toomer & J£aig,_ contra:.-.
Such would be the effect of the act in question, to give it the construction contended for by the City Council, because the proceedings admit that they have taken from the complainant more of his land than was necessary for widening the street, and that against his consent. The judges would, therefore, he authorized to declare it inoperative and void. Noton account of any inherent power in the judiciary to control the sovereign authority of the state; but by virtue of their constitutional duty, so to expound, an act of the legislature as to make it conform to the constitution, which is the supreme law of the land. But it is not necessary to pursue this inquiry, as the question does not. necessarily occur in this case, and I have taken it up only, lest it might be supposed I entertained some doubts upon the subjects I am of opinion the prohibition ought to be granted.
It has been intimated in the course of the argument; that the City Council are entitled to the land in question, by purchase from the owner. If so, they may proceed upon their contract, to compel him to make titles. That is a question which could not be heard isi this courts and it is not the intention of the court, by this decision,' to prejudice their claim in that respect.
Jtiichardson & Johnson, Justices concurred».